ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
ARA KARAMIAN (SBN 315385)
E-mail: arak@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MIKE BUBALO CONSTRUCTION CO., INC., a California corporation; THE WESTERN SURETY COMPANY, a South Dakota corporation; OLD REPUBLIC SURETY COMPANY, a Wisconsin corporation; CITY OF SIGNAL HILL, a California public entity, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR:** <br><br> 1. **MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS** <br><br> 2. **MONETARY DAMAGES THROUGH ENFORCEMENT OF LICENSE BOND** <br><br> 3. **MONETARY DAMAGES THROUGH ENFORCEMENT OF PAYMENT BONDS** <br><br> 4. **MONETARY DAMAGES THROUGH ENFORCEMENT OF STOP PAYMENT NOTICE** <br><br> 5. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT** <br><br> 6. **INJUNCTIVE RELIEF COMPELLING SUBMISSION OF FRINGE BENEFIT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS** <br><br> [29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185; 28 U.S.C. § 1367(a)] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

## JURISDICTION AND VENUE

1.     This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer in accordance with the terms and conditions of the plans, the collective bargaining agreements to which the employer is bound and applicable statutes to: (a) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employer, including through enforcement of the terms of the collective bargaining agreements and the plans (Claim 1), and enforcement of a license bond (Claim 2), two payment bonds (Claims 3 and 4) and a stop payment notice (Claim 5); (b) compel the employer to produce records for an audit to determine if additional amounts are due (Claim 6); and (c) compel the employer to timely and fully report and pay its monthly fringe benefit contributions to the plans on behalf of its employees (Claim 7). This Court has jurisdiction over Claims 1, 6 and 7 pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  This Court has supplemental jurisdiction over Claims 2 thorough 5 pursuant to 28 U.S.C. § 1367(a).  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

///

///

1

2

## **PARTIES**

3        2.      Plaintiff ("ADMINCO") is an administrator of, agent for collection for, a

4    fiduciary to, and brings this action on behalf of the following employee benefit

5    plans: Laborers Health and Welfare Trust Fund for Southern California;

6    Construction Laborers Pension Trust for Southern California; Construction Laborers

7    Vacation Trust for Southern California; Laborers Training and Re-Training Trust

8    Fund for Southern California; Fund for Construction Industry Advancement; Center

9    for Contract Compliance; Laborers Contract Administration Trust Fund for Southern

10   California; Laborers' Trusts Administrative Trust Fund for Southern California; and

11   Southern California Partnership for Jobs Trust Fund (collectively "Trust Funds").

12   Each of the Trust Funds is an express trust created by written agreement, an

13   employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C.

14   § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of

15   ERISA (29 U.S.C. § 1002(37)(A)).  Each of the Trust Funds exists pursuant to

16   ERISA and section 302 of the LMRA (29 U.S.C. § 186).  ADMINCO and the Trust

17   Funds' principal places of business are in the County of Los Angeles, State of

18   California.

19

20       3.      ADMINCO is informed and believes, and on that basis alleges, that

21   defendant Mike Bubalo Construction Co., Inc. ("EMPLOYER"):  is a corporation

22   organized and existing under the laws of the State of California; has a principal place

23   of business in the City of Baldwin Park, County of Los Angeles, State of California,

24   and does, or at all relevant times did, business in the State of California as a

25   construction contractor in an industry affecting interstate commerce.

26

27       4.      ADMINCO is informed and believes, and on that basis alleges, that

28   defendant The Western Surety Company ("WESTERN SURETY") is a South

355158.2                                            3

Dakota corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Chicago, State of Illinois, and which does, or at all relevant times did, conduct business in California as a surety.

5.    ADMINCO is informed and believes, and on that basis alleges, that defendant Old Republic Surety Company ("OLD REPUBLIC SURETY") is a Wisconsin corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Brookfield, State of Wisconsin, and which does, or at all relevant times did, conduct business in California as a surety.

6.    ADMINCO is informed and believes, and on that basis alleges, that the City of Signal Hill ("AGENCY") is a "Public Entity," as defined in California Civil Code ("Civil Code") § 8036, in the County of Los Angeles, State of California

## AGREEMENTS

7.    The EMPLOYER is, and was at all times from and since at least April 7, 2010, bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including one known as the *Southern California Master Labor Agreement*.

8.    Pursuant to the Construction Master Labor Agreements, employers become – and the EMPLOYER became – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements"). When referenced collectively hereinafter, the Construction Master Labor

Agreements and Trust Agreements are referred to as "the Agreements."

9.     Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

10.     Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

11.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the

banks upon which they are drawn.

12.     The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

13.     Under the terms of the Agreements, employers, including the EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes under the terms of the Agreements liable to the Trust Funds in an amount equal to the Monthly Contributions that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

14.     Under the terms of the Agreements, employers, including the EMPLOYER, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds.  If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for

the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

15.     The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds.  The Agreements further provide that employers, including the EMPLOYER, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due.  The Agreements also provide that the EMPLOYER must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to ADMINCO.

16.     The Agreements require employers, including the EMPLOYER, to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## PROJECTS

17.     ADMINCO is informed and believes, and on that basis alleges, that the AGENCY entered into a contract with the EMPLOYER for a public work of improvement for construction, alteration, demolition, installation or repair in Los Angeles County, California, paid in whole or in part out of public funds, identifiable as the *Design Build Services for Permitting and Constructing the Los Cerritos Channel Sub-basin 4 Stormwater Capture Facility project* ("Stormwater Capture

Project").  ADMINCO is informed and believes, and on that basis alleges, that the AGENCY has an ownership interest in the real property on which the Stormwater Capture Project was performed ("Stormwater Capture Project Property").

18.     ADMINCO is informed and believes, and on that basis alleges, that the City of Long Beach entered into a contract with the EMPLOYER for a public work of improvement for construction, alteration, demolition, installation or repair in Los Angeles County, California, paid in whole or in part out of public funds, identifiable as the *Cast Iron Main Replacement – Chery Avenue project* ("Cast Iron Main Project").

19.     Where referenced collectively hereinafter, the Stormwater Capture Project and Cast Iron Main Project are referred to together as the "Projects." ADMINCO is informed and believes, and on that basis alleges, that each of the Projects is a "public works" as defined in California Labor Code ("Labor Code") § 1720, and each of the aforementioned contracts to perform work on a Project is a "public works contract" as defined in Civil Code § 8038 and California Public Contract Code § 1101.  Pursuant to Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the Projects.

## FIRST CLAIM FOR RELIEF
### (Against the EMPLOYER for Monetary Damages
### Due to Employee Benefit Plans)

20.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 above as if fully set forth here.

21.     The EMPLOYER has failed to submit, and to timely submit, Monthly

355158.2                                          8

Contributions due by it to the Trust Funds.  Pursuant to the Agreements and sections 502(g)(2) and 515 of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145), the EMPLOYER owes the Trust Funds a known amount of $492,717.88 for unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for certain months from November 2016 through February 2019 ("Known Delinquency").  The Known Delinquency consists of: $308,827.45 in unpaid Monthly Contributions; $19,339.25 in interest (through April 19, 2019); $164,391.18 in liquidated damages; and $160.00 in audit fees.

22.    ADMINCO will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the EMPLOYER, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER (or lower-tier subcontractors).  If deemed necessary by the Court, ADMINCO will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the EMPLOYER's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

23.    Under the terms of the Agreements and section 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(2)(D)), ADMINCO is entitled to an award of its attorneys' fees and costs.

///

///

///

///

## SECOND CLAIM FOR RELIEF

### (Against WESTERN SURETY for Monetary Damages
### Through Enforcement of the Western Surety License Bond)

24.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 23 above as if fully set forth here.

25.     ADMINCO is informed and believes, and on that basis alleges, that in order to comply with California Business and Professions Code § 7071.6(a), the EMPLOYER obtained a license bond from WESTERN SURETY in the penal sum required by law and filed it with the Registrar of the California State Contractors License Board.  The bond referenced in this paragraph is referred to hereinafter as the "Western Surety License Bond."

26.     The Trust Funds are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the Western Surety License Bond under California Business and Professions Code ("Business and Professions Code") § 7071.5(e).

27.     ADMINCO submitted a claim against the Western Surety License Bond for Monthly Contributions due by the EMPLOYER to the Trust Funds ("Western Surety License Bond Claim").  Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon information and belief, the terms of the Western Surety License Bond, WESTERN SURETY is required to pay the Trust Funds up to the penal sum of the Western Surety License Bond for the failure of its principal, the EMPLOYER, to remit Monthly Contributions.

28.     WESTERN SURETY has not paid the Western Surety License Bond

Claim as required by the above-referenced statutes, and, upon information and belief, the terms of the Western Surety License Bond.

29.    ADMINCO brings this claim for relief on behalf of the Trust Funds under Business and Professions Code § 7071.11(c)(1) to enforce the terms of the Western Surety License Bond to recover a portion of the amount due by the EMPLOYER to the Trust Funds (up to the penal sum of the Western Surety License Bond).

## THIRD CLAIM FOR RELIEF

**(Jointly and Severally Against WESTERN SURETY and the EMPLOYER**
**for Monetary Damages Through Enforcement of Payment Bond**
**Covering Work on the Stormwater Capture Project)**

30.    ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 29 above as if fully set forth here.

31.    ADMINCO is informed and believes, and on that basis alleges, that WESTERN SURETY issued a payment bond naming the EMPLOYER as principal, covering work performed on the Stormwater Capture Project, including Monthly Contributions due by the EMPLOYER to the Trust Funds ("Stormwater Capture Project Payment Bond").

32.    ADMINCO is informed and believes, and on that basis alleges, that under the terms of the Stormwater Capture Project Payment Bond WESTERN SURETY is a guarantor of the compensation that must be remitted to the Trust Funds for Covered Work on the Stormwater Capture Project, including the amount due by the EMPLOYER to the Trust Funds in Monthly Contributions.  The

employees of the EMPLOYER who performed Covered Work on the Stormwater Capture Project are among the persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c).  Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

33.    Under Civil Code § 8154(a) and (c), the Stormwater Capture Project Payment Bond "shall be construed most strongly against the surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

34.    On or about April 26, 2019, ADMINCO submitted a claim on the Stormwater Capture Project Payment Bond for known amounts due by the EMPLOYER to the Trust Funds in Monthly Contributions for work by the EMPLOYER's employees on the Stormwater Capture Project, plus interest ("Stormwater Capture Project Payment Bond Claim").  The Stormwater Capture Project Payment Bond Claim totaled $130,170.06, consisting of $127,701.14 in unpaid Monthly Contributions and $2,468.92 in interest through April 12, 2019.  Additional interest is due, and continues to accrue, at the rates required by the Agreements, the Stormwater Capture Project Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

35.     WESTERN SURETY has not honored its obligation under the Stormwater Capture Project Payment Bond to pay the Stormwater Capture Project Payment Bond Claim.  ADMINCO brings this claim for relief on behalf of the Trust Funds to recover the Stormwater Capture Project Payment Bond Claim through the enforcement of the terms of the Stormwater Capture Project Payment Bond.  As the principal on the Stormwater Capture Project Payment Bond, the EMPLOYER is also liable for the amounts due under the terms of the Stormwater Capture Project Payment Bond.

36.     ADMINCO is informed and believes, and on that basis alleges, that WESTERN SURETY's failure to pay the Stormwater Capture Project Payment Bond Claim is willful.  As a result, WESTERN SURETY is required under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra compensation for each employee with respect to whom the EMPLOYER failed to remit Monthly Contributions to the Trust Funds for work performed on the Stormwater Capture Project.

37.     ADMINCO seeks enforcement of the Stormwater Capture Project Payment Bond to recover the amounts due to the Trust Funds for the Covered Work performed by the EMPLOYER's employees on the Stormwater Capture Project, including: the amount of the Stormwater Capture Project Payment Bond Claim as submitted; additional unpaid Monthly Contributions according to proof; additional interest at the rates required by the Agreements, the Stormwater Capture Project Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the Agreements, the Stormwater Capture Project Payment Bond and other law, including but not limited to Labor Code § 218.5; attorneys' fees to the extent provided by the Agreements, the Stormwater Capture Project Payment Bond and other law, including but not limited to California

Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the EMPLOYER failed to remit Monthly Contributions to the Trust Funds for work performed on the Stormwater Capture Project, as a penalty under California Labor Code § 203.5.

## FOURTH CLAIM FOR RELIEF

**(Jointly and Severally Against OLD REPUBLIC SURETY and the EMPLOYER for Monetary Damages Through Enforcement of Payment Bond Covering Work on the Cast Iron Main Project)**

38.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37 above as if fully set forth here.

39.     ADMINCO is informed and believes, and on that basis alleges, that OLD REPUBLIC SURETY issued a payment bond naming the EMPLOYER as principal, covering work performed on the Cast Iron Main Project, including Monthly Contributions due by the EMPLOYER to the Trust Funds ("Cast Iron Main Project Payment Bond").

40.     ADMINCO is informed and believes, and on that basis alleges, that under the terms of the Cast Iron Main Project Payment Bond OLD REPUBLIC SURETY is a guarantor of the compensation that must be remitted to the Trust Funds for Covered Work on the Cast Iron Main Project, including the amount due by the EMPLOYER to the Trust Funds in Monthly Contributions.  The employees of the EMPLOYER who performed Covered Work on the Cast Iron Main Project are among the persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of

the portion of those employees' compensation payable as Monthly Contributions. The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c). Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

41.    Under Civil Code § 8154(a) and (c), the Cast Iron Main Project Payment Bond "shall be construed most strongly against the surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

42.    On or about April 26, 2019, ADMINCO submitted a claim on the Cast Iron Main Project Payment Bond for known amounts due by the EMPLOYER to the Trust Funds in Monthly Contributions for work by the EMPLOYER's employees on the Cast Iron Main Project, plus interest ("Cast Iron Main Project Payment Bond Claim").  The Cast Iron Main Project Payment Bond Claim totaled $95,873.04, consisting of $93,363.76 in unpaid Monthly Contributions and $2,509.28 in interest through April 12, 2019.  Additional interest is due, and continues to accrue, at the rates required by the Agreements, the Cast Iron Main Project Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

43.    OLD REPUBLIC SURETY has not honored its obligation under the Payment Bond to pay the Cast Iron Main Project Payment Bond Claim.  ADMINCO brings this claim for relief on behalf of the Trust Funds to recover the Cast Iron Main Project Payment Bond Claim through the enforcement of the terms of the Cast Iron Main Project Payment Bond.  As the principal on the Cast Iron Main Project

Payment Bond, the EMPLOYER is also liable for the amounts due under the terms of the Cast Iron Main Project Payment Bond.

44.     ADMINCO is informed and believes, and on that basis alleges, that OLD REPUBLIC SURETY's failure to pay the Cast Iron Main Project Payment Bond Claim is willful.  As a result, OLD REPUBLIC SURETY is required under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra compensation for each employee with respect to whom the EMPLOYER failed to remit Monthly Contributions to the Trust Funds for work performed on the Cast Iron Main Project.

45.     ADMINCO seeks enforcement of the Cast Iron Main Project Payment Bond to recover the amounts due to the Trust Funds for the Covered Work performed by the EMPLOYER's employees on the Cast Iron Main Project, including: the amount of the Cast Iron Main Project Payment Bond Claim as submitted; additional unpaid Monthly Contributions according to proof; additional interest at the rates required by the Agreements, the Cast Iron Main Project Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the Agreements, the Cast Iron Main Project Payment Bond and other law, including but not limited to Labor Code § 218.5; attorneys' fees to the extent provided by the Agreements, the Cast Iron Main Project Payment Bond and other law, including but not limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the EMPLOYER failed to remit Monthly Contributions to the Trust Funds for work performed on the Cast Iron Main Project, as a penalty under California Labor Code § 203.5.

///

///

## FIFTH CLAIM FOR RELIEF

**(Jointly and Severally Against the AGENCY and the**

**EMPLOYER for Monetary Damages Through Enforcement**

**of Stop Payment Notice Filed on the Stormwater Capture Project)**

46.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 45 above as if fully set forth here.

47.     The employees of the EMPLOYER who performed Covered Work on the Stormwater Capture Project are among the persons authorized to file a stop payment notice pursuant to Civil Code §§ 9100(a)(1) and (2), and 9350.  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a stop payment notice for such compensation pursuant to Civil Code §§ 8024(b) and (c), and 9100(a)(2).  Pursuant to Civil Code § 9300(b)(1), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code § 9300(a).

48.     On or about April 26, 2019, ADMINCO served a stop payment notice by certified mail on the AGENCY, as provided for in Civil Code § 9352, in which ADMINCO requested that the AGENCY withhold known amounts due for delinquent Monthly Contributions and interest for Covered Work performed by the EMPLOYER's employees on the Stormwater Capture Project ("Stormwater Capture Project Stop Payment Notice").  The Stormwater Capture Project Stop Payment Notice totaled $130,170.06, consisting of $127,701.14 in unpaid Monthly Contributions and $2,468.92 in interest through April 12, 2019.  Additional interest is due, and continues to accrue, at the rates required by the Agreements and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

49.     Upon receipt of the Stormwater Capture Project Stop Payment Notice, the AGENCY was required under Civil Code § 9358(a) to withhold moneys due by it to the EMPLOYER in an amount sufficient to satisfy the Stormwater Capture Project Stop Payment Notice.

50.     ADMINCO brings this claim for relief under Civil Code § 9502(a) and (b) to recover the funds required to have been withheld by the AGENCY on the Stormwater Capture Project for the benefit of the EMPLOYER's employees and the Trust Funds pursuant to the Stormwater Capture Project Stop Payment Notice, plus interest thereon to the extent provided for by the Agreements and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

## SIXTH CLAIM FOR RELIEF

### (Against the EMPLOYER For Specific Performance
### of Obligation to Produce Records for Audit)

51.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 50 above as if fully set forth here.

52.     ADMINCO requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for ADMINCO to complete an audit to determine if additional amounts are due.

53.     An award of attorneys' fees and costs is provided for by the Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

## **SEVENTH CLAIM FOR RELIEF**

**(Against the EMPLOYER for Injunctive Relief Compelling Submission**

**Of Fringe Benefit Contributions to Employee Benefit Plans)**

54.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 53 above as if fully set forth here.

55.     The EMPLOYER has repeatedly failed to timely submit Monthly Reports and Monthly Contributions.

56.     By reason of the EMPLOYER's failure to comply with its Monthly Reporting and Contribution obligations, the Trust Funds, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage for at least the following reasons.  First, the Trust Funds must provide credit each month to participants and beneficiaries, including the EMPLOYER's employees, toward eligibility for fringe benefits (such as health insurance and pensions) based on the number of hours they worked, which is determined from Monthly Reports.  Second, the amount of benefits payable to all participants and beneficiaries for health insurance and pension claims, including those employed by the EMPLOYER, is actuarially determined on the basis of funds projected to be received from contributing employers (including the EMPLOYER). Third, health insurance is not provided to participants and beneficiaries, including the EMPLOYER's employees, after a certain period of non-payment of Monthly Contributions on their behalf.  Fourth, vacation pay, which is distributed by the Construction Laborers Vacation Trust for Southern California (one of the Trust Funds), is not paid to employees, including the EMPLOYER's employees, for hours of work for which their employer has not submitted Monthly Contributions.  Fifth, the Trust Funds have a legal obligation to take steps to collect amounts due by

delinquent employers and thus the EMPLOYER's ongoing delinquency results in an ongoing drain on Trust Funds resources.  Sixth, the Trust Funds lose investment income on late-paid and unpaid Monthly Contributions.

57.     The Trust Funds have no adequate or speedy remedy at law.  They therefore request that this Court exercise its authority under sections 502(g)(2)(E) and 502(a)(3) of ERISA (29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3)) to issue preliminary and permanent injunctive relief ordering the EMPLOYER to comply with its obligations under the Agreements and section 515 of ERISA (29 U.S.C. § 1145) to fully disclose its employees' Covered Work on its Monthly Reports, itemized by project, and timely submit them each month with full payment of the Monthly Contributions due.

58.     An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

**WHEREFORE, ADMINCO prays for judgment as follows:**

<u>ON ADMINCO'S FIRST CLAIM FOR RELIEF</u>

[Against the EMPLOYER for Monetary Damages

Due to Employee Benefit Plans]

A.     For $308,827.45 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B.     For $19,339.25 in interest through April 19, 2019 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by

the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from April 19, 2019, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C.     For $164,391.18 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.     For $160.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E)

E.     For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the Trust Funds as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result work performed by any subcontractors of the EMPLOYER (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

F.     For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

G.     For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

///

///

<u>ON ADMINCO'S SECOND CLAIM FOR RELIEF</u>

[Against WESTERN SURETY for Monetary Damages

Through Enforcement of Western Surety License Bond]

A.     For enforcement of the Western Surety License Bond pursuant to California Business and Professions Code §§ 7071.5(e) and 7071.11(a)

B.     For the penal sum of the Western Surety License Bond, plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions providing the basis for the Western Surety License Bond Claim became due.

C.     For reasonable attorneys' fees and costs.

D.     For such other relief that this Court deems appropriate

<u>ON ADMINCO'S THIRD CLAIM FOR RELIEF</u>

[Jointly and Severally Against WESTERN SURETY and the EMPLOYER

for Monetary Damages Through Enforcement of Payment Bond

Covering Work on Stormwater Capture Project]

A.     For $127,701.14 unpaid Monthly Contributions due to the Trust Funds guaranteed by the Stormwater Capture Project Payment Bond for Covered Work performed by the EMPLOYER's employees on the Stormwater Capture Project.

B.     For $2,468.92 in interest on the unpaid Monthly Contributions through April 12, 2019.

///

C.     For additional interest from April 12, 2019 at the rates required by the Agreements, the Stormwater Capture Payment Bond and other law, including but not limited to California Labor Code § 218.6 and California Civil Code § 3287.

D.     For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the EMPLOYER for Covered Work on the Stormwater Capture Project.

E.     For costs required by the Agreements, the Stormwater Capture Project Payment Bond and other law, including but not limited to California Labor Code § 218.5 and California Civil Code § 9364(a).

F.     For reasonable attorneys' fees to the extent recoverable pursuant to the Agreements, the Stormwater Capture Project Payment Bond and other law, including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

G.     For an amount equal to 30 days extra compensation for each employee with respect to whom the EMPLOYER failed to submit Monthly Contributions to the Trust Funds for Covered Work performed on the Stormwater Capture Project, as a penalty under California Labor Code § 203.5.

H.     For such other relief that this Court deems appropriate.

///
///
///
///
///
//

355158.2

23

## ON ADMINCO'S FOURTH CLAIM FOR RELIEF

[Jointly and Severally Against OLD REPUBLIC SURETY and

the EMPLOYER for Monetary Damages Through Enforcement of Payment

Bond Covering Work on Cast Iron Main Project]

A.      For $93,363.76 in unpaid Monthly Contributions due to the Trust Funds guaranteed by the Cast Iron Main Project Payment Bond for Covered Work performed by the EMPLOYER's employees on the Cast Iron Main Project.

B.      For $2,509.28 in interest on the unpaid Monthly Contributions through April 12, 2019.

C.      For additional interest from April 12, 2019 at the rates required by the Agreements, the Cast Iron Main Payment Bond and other law, including but not limited to California Labor Code § 218.6 and California Civil Code § 3287.

D.      For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the EMPLOYER for Covered Work on the Cast Iron Main Project.

E.      For costs required by the Agreements, the Cast Iron Main Project Payment Bond and other law, including but not limited to California Labor Code § 218.5 and California Civil Code § 9364(a).

F.      For reasonable attorneys' fees to the extent recoverable pursuant to the Agreements, the Cast Iron Main Project Payment Bond and other law, including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

G.     For an amount equal to 30 days extra compensation for each employee with respect to whom the EMPLOYER failed to submit Monthly Contributions to the Trust Funds for Covered Work performed on the Cast Iron Main Project, as a penalty under California Labor Code § 203.5.

H.     For such other relief that this Court deems appropriate.

## ON ADMINCO'S FIFTH CLAIM FOR RELIEF

[Jointly and Severally Against the AGENCY and the EMPLOYER

for Monetary Damages Through Enforcement of Stop Payment Notice

Filed on the Stormwater Capture Project]

A.     For $127,701.14 in Monthly Contributions.

B.     For $2,468.92 in interest on the unpaid Monthly Contributions through April 12, 2019.

C.     For additional interest from April 12, 2018 at the rate or rates required by law, including pursuant to Labor Code § 218.6, Civil Code § 3287 or the Trust Funds' plan rate, whichever is greatest.

D.     For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the EMPLOYER for Covered Work on the Stormwater Capture Project.

E.     For costs of suit.

F.     For such other relief that this Court deems appropriate.

### ON ADMINCO'S SIXTH CLAIM FOR RELIEF

[Against the EMPLOYER for Specific Performance of

Obligation to Produce Records for Audit]

A.     For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records covering from at least November 1, 2016 to the date of the audit, to fully cooperate with ADMINCO with respect to the audit in order for ADMINCO to determine the total amount due to the Trust Funds by the EMPLOYER, and, specifically, to produce to ADMINCO the following payroll and business records – and any other records determined by ADMINCO to be necessary to conduct a full audit – for inspection, examination and copying:

A.1.   All of the EMPLOYER's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors and the employees of the EMPLOYER's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the EMPLOYER, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the EMPLOYER, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the

names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

A.2.   All of the EMPLOYER's job files for each contract, project or job on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the EMPLOYER and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the EMPLOYER's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.3.   All of the EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.4.   All of the EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

A.5.   All of the EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts

1   payable journals, check registers and all other records which indicate disbursements;

2

3      A.6. All collective bargaining agreements between the EMPLOYER

4   and any trade union, and all records of contributions by the EMPLOYER to any trade

5   union trust fund; and

6

7      A.7. All records related to the formation, licensing, renewal or

8   operation of the EMPLOYER.

9

10     B. For reasonable attorneys' fees and costs of suit, as required by the

11   Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

12

13     C. For such other relief that this Court deems appropriate, pursuant to any

14   authority of the Court, including but not limited to the authority established by

15   29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

16

17       <u>ON ADMINCO'S SEVENTH CLAIM FOR RELIEF</u>

18      [Against the EMPLOYER for Injunctive Relief Compelling

19     Submission of Fringe Benefit Contributions to Employee Benefit Plans]

20

21     A. For the issuance of injunctive relief pursuant to the Agreements

22   and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its

23   managing officers, managing employees, agents and successors, as well as all those

24   in active concert or participation with any one or more of them, to deliver, or cause to

25   be delivered to the Trust Funds:

26

27      A.1. All past due monthly fringe benefit contribution report forms due

28   by the EMPLOYER to the Trust Funds, fully completed to indicate hours of work

performed by the EMPLOYER's employees for which fringe benefit contributions are due by the EMPLOYER and the corresponding amounts of fringe benefit contributions due by the EMPLOYER to the Trust Funds, if any, or, if no such hours of work were performed for a given month, an indication on the report form of that fact.

A.2.   No later than 4:30 p.m. on the 15th day of each month for the duration of the Agreements:

A.2(a).  Truthfully and accurately completed Monthly Report(s) covering all of the EMPLOYER's accounts with the Trust Funds, collectively identifying all persons for whom Monthly Contributions are owed to the Trust Funds for the previous month and their Social Security numbers, and, itemized by person and project, the hours of work performed for which Monthly Contributions are due;

A.2(b).  An affidavit or declaration from a managing officer or other managing agent of the EMPLOYER attesting under penalty of perjury to the completeness, truthfulness and accuracy of each Monthly Report submitted; and

A.2(c).  A cashier's check or checks made payable to the "Construction Laborers Trust Funds for Southern California" totaling the full amount of Monthly Contributions due to the Trust Funds for the previous month.

B.   For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

///

///

///

C.     For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

DATED:  April 26, 2019

REICH, ADELL & CVITAN
A Professional Law Corporation

By:_____/s/_____
PETER A. HUTCHINSON
Attorneys for Plaintiff